555 So.2d 888 (1990)
STATE of Florida, Appellant,
v.
Nicholas Patrick POWERS, Warren A. Stevens and Linda J. Schoeppl, Appellees.
No. 89-01025.
District Court of Appeal of Florida, Second District.
January 5, 1990.
Rehearing Denied January 24, 1990.
*889 Robert A. Butterworth, Atty. Gen., Tallahassee, and Stephen A. Baker, Asst. Atty. Gen., Tampa, for appellant.
Denis M. de Vlaming and William C. Gregg, III, Clearwater, for appellees.
SCHOONOVER, Acting Chief Judge.
The state has appealed three orders entered by the county court in and for Pinellas County, Florida. We have accepted jurisdiction pursuant to Florida Rules of Appellate Procedure 9.030(b)(4)(A) and 9.160(e)(2). After reviewing the briefs, record on appeal, and hearing oral argument, we conclude that the trial court erred by dismissing the charges against the appellees, Nicholas Patrick Powers, Warren A. Stevens, and Linda J. Schoeppl and, accordingly, reverse.
The appellees were arrested by the Pinellas County Sheriff's Department and charged with driving under the influence (DUI) in violation of section 316.193, Florida Statutes (1987). The appellees filed motions to dismiss the charges filed against them. The motions alleged that the appellees' due process rights were violated because the sheriff's department did not video tape the field sobriety tests conducted at the time of arrest and later at the place of incarceration.
At the hearing on the motions, two of the appellees testified that they performed the tests better than the written reports indicated, and they felt that a video tape would support their position. The parties stipulated that the third appellee would testify the same way. In addition to the testimony of the appellees and the alcoholic influence report forms prepared by the arresting officers, Sergeant Lonnie Hill, supervisor of the DUI squad, testified and laid the predicate for the introduction of a memorandum that he had prepared at the request of his immediate supervisor. On the date of the hearing, February 17, 1989, Hill had been employed by the sheriff's department for approximately seven years. During that period of time, the department had never video taped drivers performing field sobriety tests. During the month of June 1988, Hill, at the request of his supervisor, prepared a memorandum concerning the use of video tapes in the prosecution of DUI offenses. The memorandum stated, among other things, that Hill had received information that video taping did not help the prosecution of DUI offenses, but instead favored the driver when a driver had a blood alcohol reading just over that needed to establish a presumption of impairment. In Hill's opinion, a deputy's observation of an accused's performance of the field sobriety test was the best evidence of the performance and the testing procedures should not be video taped. There was no evidence presented to establish that the sheriff's policy of not video taping field sobriety tests was based upon this memorandum or upon Hill's opinion. At the conclusion of the hearing, the trial court granted the appellees' motion to dismiss.
In a very thorough order, the court concluded that law enforcement's demonstrated bad faith in intentionally failing to preserve potentially exculpatory evidence of the appellees' successful performance of the field sobriety tests constituted a denial of due process sufficient to warrant dismissal of the charges. The state filed a timely notice of appeal from that order dismissing the charges, and pursuant to the trial court's request, we accepted jurisdiction of the consolidated appeals.
Under the circumstances of this case, we agree with the state that the appellees' due process rights were not violated by the sheriff's department not video taping the appellees' performance during field sobriety testing.

I.
Based upon the record presented to us, if the appellees' performances had been video taped and the tape had not been preserved, we would affirm the trial court's dismissal of the charges filed against the appellees without having to consider the good or bad faith of the sheriff's department. An accused's due process rights are violated, irrespective of the good or bad faith of the prosecution, if the prosecution suppresses material evidence *890 favorable to the accused. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Although an accused's due process rights are not violated if the contents of a lost or destroyed tape recording would not have been beneficial to the accused, thus demonstrating a lack of prejudice, the state has the burden of showing the absence of prejudice. State v. Sobel, 363 So.2d 324 (Fla. 1978). In this case, the record reflects that each of the appellees presented evidence indicating that the tapes would be material in that they would impeach the field sobriety test reports and the testimony of the arresting and backup officers. Accordingly, the loss or destruction of the tape, if it had been made, would have prejudiced the appellees and resulted in a violation of their due process rights, and we would affirm the trial court. Sobel.
In this case, the trial court concluded that law enforcement's demonstrated bad faith in intentionally failing to preserve potentially exculpatory evidence of appellees' successful performance on field sobriety tests constituted a denial of due process sufficient to warrant dismissal of the charges. We disagree. In a case where the destruction of evidence is a flagrant and deliberate act done in bad faith with the intention of prejudicing the defense, that alone would be sufficient to warrant a dismissal of the charges against the appellees. See Strahorn v. State, 436 So.2d 447 (Fla. 2d DCA 1983). In its order, the trial court found that the decision not to video tape field sobriety testing was a conscious policy decision that was made and approved by the sheriff based upon information and advice received from his subordinates through written memorandum. The court then referred to Hill's memorandum on June 22, 1988, and found it could be considered as having formed the basis for the sheriff's decision not to video tape field sobriety tests. The record lacks any evidence that the policy of not video taping had anything to do with this memorandum. The sheriff's department, then under the direction of Sheriff Coleman, established a policy of not video taping performance tests approximately seven years prior to Hill's memorandum recommending that the department refrain from doing so. Absent any evidence that the policy was not initiated in good faith, we will not impute a finding of bad faith based upon the opinion of one deputy given to a subordinate to the sheriff seven years later. We must instead conclude that the policy was instituted for reasons in good faith and that the deputies were operating under that continued policy when they did not video tape the appellees' field sobriety test performances. See Alsop v. Pierce, 155 Fla. 185, 19 So.2d 799 (1944).

II.
In this case, however, we are not dealing with a video tape that was lost or destroyed, but instead with a video tape that was never created. We agree that there is no material difference between the destruction of evidence by the state's affirmative act and its destruction by the state's failure to act where it has a ready means of preserving the evidence with a minimum of inconvenience. State v. Hills, 467 So.2d 845 (Fla. 4th DCA 1985). The issue before us, however, is not the failure to preserve evidence, but the failure to gather and preserve evidence in a particular manner. If we were to require the state in every case, in its investigation of a crime, to leave no stone unturned and preserve the evidence obtained in a manner satisfactorily only to the accused, it would shift the line of fairness between the rights of an accused and the rights of society totally to one side. State v. Wells, 103 Idaho 137, 645 P.2d 371 (Ct.App. 1982).
Law enforcement does not have a constitutional duty to perform any particular tests. Arizona v. Youngblood, 488 U.S. ___, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Certain duties arise, however, once a policy of gathering evidence through certain tests is established. Once law enforcement has gathered and taken possession of evidence, a duty of preservation in some form attaches. Budman v. State, 362 So.2d 1022 (Fla. 3d DCA 1978).
*891 The Pinellas County Sheriff's Department chose to perform two particular tests in connection with its prosecution of DUI cases. First, by collecting a sample of an accused's breath and performing a test on that breath, the department was able to determine the percentage of alcohol in an accused's blood. Although the appellees who took intoxilyzer tests in this case did not attack those tests, the principles established in connection with that type of test control our decision in this matter. Unless a criminal defendant can show bad faith on the part of law enforcement, the state's failure to preserve potentially useful evidence of which no more can be said that it could have been subjected to tests, the results of which might have exonerated the defendant, does not constitute a violation of the due process clause. Youngblood. Accordingly, the due process clause does not require law enforcement agencies to preserve breath samples of suspected drunken drivers in order for the results of breath analysis tests to be admissible in criminal prosecutions. California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). The policy of not preserving breath samples is without constitutional defect. Trombetta. Whatever duty law enforcement has to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. If there is no indication that law enforcement fails to preserve a sample of breath in bad faith, and the accused has sufficient opportunity to question the results of the tests, the state is not obligated to take affirmative steps to preserve a blood or breath sample. See Trombetta; Houser v. State, 474 So.2d 1193 (Fla. 1985). See also State v. Garafola, 459 So.2d 1066 (Fla. 4th DCA 1984); State v. Plawchan, 453 So.2d 496 (Fla. 1st DCA 1984).
We turn now to the second test conducted by the Pinellas County Sheriff's Department, i.e., the field sobriety test. Applying the principles discussed herein, we find that the appellees' due process rights were not violated when that agency followed its long standing policy of not video taping the performance of field sobriety tests.
First, as already discussed, we reject the appellees' contention that the trial court correctly held that this policy was adopted in bad faith and that charges should, therefore, be dismissed pursuant to Youngblood and Houser. Once again, we will not impute bad faith to the sheriff's department because other agencies have a different policy and one member of a large staff, even for some improper reasons, recommended that the policy be continued more than seven years after it was established. Absent any evidence to the contrary, we must assume that the policy was established in good faith. Alsop.
The law enforcement agency did not refuse to preserve the evidence they intended to introduce at appellees' trial, i.e., the results of the field sobriety tests, they just did not preserve it in the manner desired by the appellees. Whatever duty the sheriff's department had to preserve the field sobriety tests other than by the means used is limited to material matter, i.e., the evidence must both possess an exculpatory value that was apparent before the evidence was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Trombetta. In this case, even if we assume that the tape might have been exculpatory if the state had video taped the appellees' performance and that there is evidence to support this assumption, it does not follow that the appellees do not have alternate means to defend against the test results. There has been no showing or indication that the officers improperly conducted the tests, and the appellees retain the right to cross-examine the officers who witnessed the tests and to present other evidence concerning the reliability of the tests.
Since there is no sufficient indication that the sheriff's department, in bad faith, failed to preserve the results of the appellees' performance of the field sobriety tests *892 and the department was following an established policy, and the appellees had sufficient opportunity to question the results of the tests, the Pinellas County Sheriff's Department did not violate the appellees' due process rights by not video taping their field sobriety tests performances. See Trombetta; Houser; Garafola; Plawchan. See also Turner v. State, Dep't of Motor Vehicles, 14 Wash. App. 333, 541 P.2d 1005 (1975).
Reversed and remanded for further proceedings consistent herewith.
FRANK and PARKER, JJ., concur.