DECISION AND JUDGMENT ENTRY
This is an appeal from an Athens County Municipal Court judgment that granted a motion to suppress evidence filed by Frederick A. Wooten, Jr., defendant below and appellee herein. Pursuant to Crim.R. 12(J), the State of Ohio, plaintiff below and appellant herein, appeals the trial court's judgment and assigns the following error for review:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLEE'S MOTION TO SUPPRESS ON AUTHORITY OF STATE V. BENTON
(2000), 136 OHIO APP.3d 801 AND DISMISSING THE CASE."
On February 1, 2001, at 11:43 p.m., Ohio State Highway Patrol Trooper James H. Croston, Jr. observed appellee's vehicle traveling approximately sixty miles per hour in a fifty mile per hour speed zone. The trooper stopped appellee's vehicle and approached the driver's side window. When appellee rolled down his window, the trooper noticed appellee's red and glassy eyes and a strong alcohol odor emanating from appellee's person.
Trooper Croston requested appellee to exit the vehicle. Appellee did not have any difficulty exiting the vehicle. When the trooper talked with appellee, the trooper noted that appellee had slurred speech. After he administered the coordination tests, the trooper arrested appellee.
Appellee subsequently was charged with: (1) speeding, in violation of R.C. 4511.12(C); (2) operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1) and (A)(3); and (3) failure to wear a safety belt, in violation of R.C. 4513.263.
On March 12, 2001, appellee filed a motion to suppress evidence. Appellee argued that the officer lacked reasonable suspicion to stop and detain appellee, lacked probable cause to arrest appellee, and that the trooper failed to administer the sobriety tests in accordance with the applicable standards.
On May 3, 2001, the trial court held a hearing on appellee's motion to suppress evidence. At the hearing, appellee asserted that the charges should be dismissed because Trooper Croston failed to properly videotape appellee's performance of the field sobriety tests. The trooper testified that the Ohio State Highway Patrol's policy is to videotape, with audio, vehicle stops "when everything is possible." The trooper stated that he was unable to properly record the audio of appellee's February 1, 2001 vehicle stop due to technical difficulties and that he was unable to properly record the video of the stop because of concerns for his safety.
Trooper Croston explained that prior to the beginning of his February 1, 2001 shift, he checked the video and audio equipment in his patrol cruiser to ensure that it was working. He stated that he as far as he recalled, the equipment was working properly.
He further stated that the video camera automatically activates once the cruiser's lights are activated and that the trooper must manually activate the audio by turning on his microphone. The trooper testified that during appellee's vehicle stop, he believes that he turned his microphone on, but explained that the microphone may have had a bad battery. The trooper also stated that during late January and early February of 2001, he was having problems with his cruiser's video and audio equipment.
Trooper Croston also explained that when he stopped appellee's vehicle, the video camera pointed to the rear of appellee's vehicle. He stated that he did not position appellee and himself so that the video camera would capture them due to "officer's safety." The trooper noted that capturing appellee on video would have required the trooper to enter the cruiser to re-position the camera. In doing so, he would need to take his eyes off of appellee and bend over in cruiser, with his back to appellee.
Following the hearing, the trial court dismissed the case on authority of State v. Benton (2000), 136 Ohio App.3d 801, 737 N.E.2d 1046. The trial court stated that the videotape "obviously could have been adjusted before [the officer] left the cruiser."
In its sole assignment of error, the state argues that the trial court erred by relying upon Benton to determine that appellee's due process rights were violated. We agree.
Initially, we note that appellate review of a trial court's decision regarding a motion to suppress evidence involves a mixed question of law and fact. See State v. Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1,3. When ruling on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See Statev. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584; State v.Dunlap (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988, 995. Accordingly, a reviewing court must defer to the trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. See State v. Smith (1997), 80 Ohio St.3d 89, 105, 684 N.E.2d 668;Long, supra; State v. Medcalf (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Long; State v. Williams
(1993), 86 Ohio App.3d 37, 619 N.E.2d 1141; State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11, unreported. See, generally, Ornelas v.United States (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911;State v. Wise (Sept. 12, 2001), Summit App. No. 20443, unreported.
In Benton, the defendant sought discovery of a videotape recording made during a traffic stop. For unexplained reasons, the state did not produce the tape. Eventually, the state discovered that the tape, if one ever existed, was erased and re-used. On appeal, the defendant argued that the state's destruction of the videotape violated his due process rights. In addressing the defendant's argument, the court assumed that the videotape had existed and stated that when "a defendant moves to have evidence preserved and that evidence is nonetheless destroyed by the state in accordance with its normal procedures, the appropriate remedy is to shift the burden to the state to show that the evidence was not exculpatory."Id., 136 Ohio App.3d at 805, 737 N.E.2d at 1049. The court concluded that the state could not meet its burden.
The Benton court further noted that the defendant's argument was not "that his constitutional rights were violated because the state failed to engage in discovery." Id., 136 Ohio App.3d at 860, 737 N.E.2d at 1050. Instead, the court characterized the defendant's argument as "arguing that the state violated his constitutional rights in destroying evidence that it knew appellant wanted preserved and produced." Id.The court thus concluded that the state violated the defendant's due process rights and vacated the defendant's conviction.
The case at bar differs from Benton. In the case sub judice, the state (1) did not destroy evidence; (2) did not fail to preserve evidence that had been collected; and (3) did not fail to respond to a discovery request. Instead, appellee's argument appears to be that the state failed to collect evidence that could have been collected in the manner that he wanted the evidence collected.
The Due Process Clause of the United States Constitution does not require the state to employ particular investigative techniques to the defendant's liking. Arizona v. Youngblood (1988), 488 U.S. 51, 59
(stating that the Due Process Clause is not "violated when the police fail to use a particular investigatory tool"). Instead, "[t]he Due Process Clause of the Fourteenth Amendment requires the State to disclose to criminal defendants favorable evidence that is material either to guilt or to punishment." California v. Trombetta (1984), 467 U.S. 479,480 (citations omitted). The court explained:
"Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense. To safeguard that right, the Court has developed `what might loosely be called the area of constitutionally guaranteed access to evidence.' United States v. Valenzuela-Bernal (1982),458 U.S. 858, 867. Taken together, this group of constitutional privileges delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system."Id., 467 U.S. at 485.
Moreover, the Due Process Clause is not violated when the state fails "to preserve potentially useful evidence" "unless a criminal defendant can show bad faith on the part of the police." Youngblood,488 U.S. at 58.
As we stated above, the issue in the case at bar is not whether the state failed to disclose favorable evidence to appellee or whether the state failed to preserve potentially useful evidence. Rather, appellee's claim is that the state violated his due process rights by failing to use a particular investigatory tool. In Youngblood, the court discounted this argument as follows:
 "The situation is no different than a prosecution for drunken driving that rests on police observation alone; the defendant is free to argue to the finder of fact that a breathalyzer test might have been exculpatory, but the police do not have a constitutional duty to perform any particular tests." Id., 488 U.S. at 59.
Similarly, in the case at bar, appellee is free to argue that the videotape and audiotape might have been exculpatory. The state, however, has no constitutional duty to ensure that DUI defendants' traffic stops and sobriety tests are recorded on video or audio tape. See, generally,State v. Daniels (Fla.App. 1997), 699 So.2d 837;[1] State v. Havatone
(Ariz.App. 1989), 769 P.2d 1043 (holding that a suspect arrested for driving while under the influence of alcohol does not have a constitutional right to have the police make an audio or video recording of him at or near the time of his drunken driving arrest).
Because no constitutional violation arises merely from a law enforcement officer's failure to employ a particular investigative tool, the suppression of evidence or the dismissal of a charge is not warranted. We therefore agree with the state that in the case sub judice
the trial court erred by dismissing the charges against appellee. However, we welcome and encourage further review and scrutiny of this matter.
We wish to emphasize, however, that we are not unsympathetic to the appellant's argument or to the trial court's obvious frustration and its ultimate decision. We note that the evidence adduced at the hearing reveals that the arresting officer has apparently failed to use the video and audio equipment on more that one occasion. We believe that the officer's failure to use the audio and video equipment could properly be considered by the trier of fact, whether during a motion to suppress evidence hearing to determine the existence of probable cause to arrest or at a trial on the merits, in the exercise of its duty to assess witness credibility. In other words, a trier of fact could choose to discount an officer's testimony in view of the failure to collect audio and video evidence.
Accordingly, based upon the foregoing reasons, we sustain appellant's sole assignment of error, reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion.
JUDGMENT REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITHTHIS OPINION.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and remanded for further proceedings consistent with this opinion. Appellant shall recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Abele, P.J., Harsha, J. Kline, J.: Concur in Judgment Opinion.
[1] In Daniels, the defendants were charged and convicted of the attempted purchase of cocaine as part of a sting operation. The trial court dismissed the charges against the defendants when the police failed to record the drug transaction that formed the basis for charges. The officer who posed as the drug dealer was equipped with a transmitting unit that allowed other officers to monitor transaction, but no audio recording was made of the transaction.
The court recognized that "the failure to preserve evidence alreadygathered may constitute a due process violation requiring dismissal of the [case]." 699 So.2d at 838 (emphasis sic). The court stated, however, that "no case law or statute impos[es] a duty on law enforcement to record a criminal transaction or to perform any particular tests when, as here, the agency has the means to do so:
 `Law enforcement does not have a constitutional duty to perform any particular test. Certain duties arise, however, once a policy of gathering evidence through certain tests is established. Once law enforcement has gathered and taken possession of evidence, a duty of preservation in some form attaches.'"
699 So.2d at 838 (quoting State v. Powers (Fla.App. 1990), 555 So.2d 888,890).
The court stated:
 "`If we were to require the state in every case, in its investigation of a crime, to leave no stone unturned and preserve the evidence obtained in a manner satisfactorily only to the accused, it would shift the line of fairness between the rights of an accused and the rights of society totally to one side.'" 699 So.2d at 839 (quoting Powers, 555 So.2d at 890 (citation omitted)).