OPINION
Defendant-appellant, Rodney Craig Bowman, appeals from his conviction by the Marion County Court of Common Pleas, Criminal Division, on one count of felonious assault, in violation of R.C. 2903.11(A)(2).
The pertinent facts and procedural history are as follows. In the early morning hours of May 14, 2001, approximately 20-40 people gathered for an after hours party at the home of Joanne Hinkle located at 337 East George Street, Marion, Ohio. The festivities began on Sunday night, karaoke night, at the O.K. Cafe where aspiring singers and their friends gathered to eat, drink and be merry. When the bar closed, a number of the patrons, professedly "feeling-good," left for Ms. Hinkle's house to continue to the night's revelry.
At 3:30 that morning, Dee Widmer stood on the front lawn arousing the attention of those inside the house by yelling something to the effect that she had been hit. Earlier, she had been in the house claiming, in her stupor, to be a federal agent. Fellow partygoers Jonathan Burris and David Butcher found Ms. Widmer standing with her hand to her mouth and blood on her lip. Mr. Burris asked her what happened and she told him that she had been struck by the appellant, who stood a number of feet away. Mr. Burris, standing at 6'2" and roughly 250 lbs., then confronted the appellant, who rose to 5'8" and pressed the scales at 145 lbs. Mr. Burris asked him whether he had hit Ms. Widmer. Words were exchanged and the appellant took off, running up the driveway and behind the house with Mr. Burris in pursuit.
Mr. Burris nabbed the appellant in the backyard and attempted to wrestle him to the ground, allegedly, he said, to hold him until the police arrived. A fight ensued and ended with the appellant stabbing Mr. Burris seven times with a 2 1/2" bladed knife that he had clipped to his pocket. Apparently, Mr. Burris did not feel the knife the first six times when the appellant stabbed him in his left side and on the top of his left thigh. Upon the seventh thrust of the appellant's knife, however, Mr. Burris winced. He released the appellant as the blade pierced his abdomen. The appellant fled through a gap in the privacy fence that surrounded the backyard. The next day the police arrested the appellant at his place of employment. The knife was never located.
While the appellant fled the scene, an ambulance transported Mr. Burris to Marion General Hospital where surgery was performed by Dr. Paul Culler. Dr. Culler testified that the injuries were life threatening given the loss of blood and signs of shock. Mr. Burris remained hospitalized for a week. At trial he personally estimated that it would take approximately one year for him to completely recover from the stab wounds.
The appellant was indicted on one count of felonious assault and one count of tampering with evidence, a charge that was later withdrawn. The appellant pleaded not guilty. On August 30, 2001, following a three day jury trial, the appellant was found guilty of felonious assault, a second-degree felony. By entry dated September 11, 2001, the appellant was sentenced to two years in prison. The appellant now appeals asserting five assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I
"Defendant-appellant's conviction is contrary to the manifest weight of the evidence."
In his first assignment of error, the appellant contends that the verdict was against the manifest weight of the evidence.
In reviewing weight of the evidence issues, the reviewing court "will not [disturb the verdict] * * * unless * * * reasonable minds could not reach the conclusion reached by the trier of facts."[1] The appellate court must keep in mind that the jury heard all the evidence and has the responsibility to weigh the evidence and determine the witnesses' credibility.[2] Thus, the record should be examined "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."[3]
The appellant was charged with felonious assault. The state had the burden of proving beyond a reasonable doubt that the appellant, knowingly did "cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." At trial, the appellant proceeded with the defense of self-defense. To establish this defense, the appellant had the burden to demonstrate:
 "(1) * * * [he] was not at fault in creating the situation giving rise to the affray; (2) * * * [he] has [sic] a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of * * * force; and (3) * * * [he] must not have violated any duty to retreat or avoid the danger. * * *"[4]
Although the appellant claimed that he acted in self-defense, the jury clearly was not persuaded on this point. We find the weight of the evidence supported the jury's finding of guilt on the charge of felonious assault. Although the appellant may have genuinely believed that he was in imminent danger of great bodily harm and retreated to avoid the danger, we do not find that the appellant demonstrated that he was not at fault in creating the situation that led to the fracas.
Based upon our review of the record, we find that reasonable minds could reach the conclusion attained by the jury. Thus, the judgment was not against the manifest weight of the evidence. The appellant's first assignment of error is without merit and is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. II
"Prosecutorial misconduct rendered defendant-appellant's trial fundamentally unfair in violation of the constitutions of Ohio and the United States."
For his second assignment of error, the appellant asserts he was denied his constitutional right to a fair trial because of prosecutorial misconduct. The appellant contends that during the state's opening statement and closing argument, the prosecutor made a number of improper statements. No objection was made during trial, thus the appellant submits the prosecutor's statements constitute plain error pursuant to Crim.R. 52(B). Plain error will only be found under exceptional circumstances necessary to prevent a manifest miscarriage of justice.[5]
According to the Ohio Supreme Court in State v. Twyford, "the test for prosecutorial misconduct is whether the remarks were improper and, if so, whether the remarks prejudicially affected the accused's substantial rights."[6] The touchstone of our analysis "is the fairness of the trial, not the culpability of the prosecutor."[7] Thus, prosecutorial misconduct will not be grounds for reversal unless it so tainted the proceedings that it deprived the defendant of a fair trial.[8]
Regarding the opening statement, the appellant protests the following language from the prosecutor:
 "In this case we'll prove that the Defendant's acts in stabbing Jonathan Burris seven times, five times in the side, once in the leg, and once in the center of his stomach, were not motivated out of self-defense, not motivated out of necessity to protect his own life, but rather it's a senseless act of violence motivated by anger."
The appellant asserts that the prosecutor implied to the jury that the appellant, in order to prove self-defense, had to prove his acts were necessary to protect his life. The standard, in part, is whether the appellant had a bona fide belief that his life was in imminent danger of grave bodily harm and the only means to escape was through the use of force.[9] The appellant claims that this misstatement "festered" throughout the trial for lack of trial counsel's objection and tainted the jury's consideration of the evidence.
With respect to the closing argument, the appellant claims the following statement constituted misconduct:
 "If you believe the Defendant, you have to believe that he just has the misfortune of numerous people falsely accusing him. You have to believe that it starts with Dee falsely accusing him with assaulting her. You have to believe that Jonathan Burris falsely accuses him. You have to believe that David Butcher falsely accuses him. You have to believe that Amy Smith falsely accuses him."
The appellant contends that the prosecutor's argument rises to the level of misconduct because it asserts inferences that are not supported by the evidence. Further, the appellant argues that it raises a false dilemma of an issue of witness credibility.
The state, on the other hand, points out that the appellant's testimony contradicted that of the other witnesses. On the question of the appellant's credibility, the prosecutor continued his argument as follows:
 "You have to believe that it is just a coincidence that there's no evidence of any of these hits or kicks he says that he received. It's just a coincidence that no one else saw that. It's just a coincidence that this knife he says he left at the scene is gone within three minutes when the police arrive. You have to believe it's just a coincidence that the only injury that he receives is in the very location that he would receive from an offensive stabbing wound as the knife slips over his finger."
The appellant testified that he had been thrown to the ground, punched and kicked and had the lumps on his head to prove it. No other witnesses offered testimony to this effect, nor was there additional evidence or testimony to support the appellant's claims of the beating he received. As the state asserts in its brief, for the appellant's testimony to be accurate, the other witnesses' testimony has to be wrong.
Upon our review, we find that the remarks of the prosecutor were not improper and fail to rise to a level of having a prejudicial affect on any of appellant's substantial rights.
 ASSIGNMENT OF ERROR NO. III
"Jury instruction given by the court based on the [sic] State v.Howard was improper and prejudiced defendant-appellant."
The appellant, in his third assignment of error, challenges the supplemental jury instruction delivered after the jury indicated that they had reached an impasse.
Several hours into the jury's deliberations and after taking three votes, the jury found itself unable to reach a verdict and asked the trial court for further instruction. After discussing the matter with counsel, the trial court determined to give the jury instructions approved by the Ohio Supreme Court in State v. Howard.[10] No objection was made to the supplemental charge given by the trial court.
It is well settled that a failure to object to jury instructions before the jury retires, absent plain error, constitutes a waiver.[11] The plain error doctrine allows a court to take note of plain errors or defects affecting substantial rights, even though such error was not brought to the attention of the trial court.[12] The doctrine is to be used cautiously and only under exceptional circumstances to prevent a manifest miscarriage of justice.[13] Plain error will not be found with regard to improper jury instructions unless the outcome of the trial would clearly have been different.[14]
In State v. Long, the Ohio Supreme Court held that a trial court's erroneous instruction on the burden of proof for the affirmative defense of self-defense did not constitute plain error.[15] The appellant, in the present case, asserts that the trial court's supplemental instruction did not address the affirmative defense. This is true. However, in light of State v. Long and the fact that the original instructions set forth the burden and standard of proof for self-defense, we find no plain error in the court's supplemental charge to the jury. Accordingly, the appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. IV
"Defendant-appellant was denied due process of law and effective assistance of counsel by the state's failure to preserve the written statement of Amy Smith."
In his fourth assignment of error, the appellant asserts that the state's failure to preserve the written statement of Amy Smith has deprived him of his right to due process of law and the effective assistance of counsel.
"[T]he Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from being convicted of a crime where the state * * * fails to preserve materially exculpatory evidence."[16] Materially exculpatory evidence possesses an exculpatory value that was apparent before the evidence was destroyed, and is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means.[17]
In the present case, the Marion City Police Department ("MCPD") lost Ms. Smith's written statement. The appellant addressed this issue before numerous witnesses during the trial. Pursuant to Crim.R 16(B)(1)(g), the appellant would have been entitled to an in camera inspection of Ms. Smith's statement following her direct testimony. Because the statement was lost this opportunity was denied.
Before we reach the question of whether the evidence was materially exculpatory, the appellant must show bad faith on the part of the MCPD in misplacing the statement. The Ohio Supreme Court has stated that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."[18] The appellant has not met this burden. Although the appellant has shown evidence of sloppy record keeping by the MCPD, we do not find evidence of bad faith. Therefore, the appellant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. V
"The combination of the aforementioned errors are sufficient to call into question the validity of the verdict, preventing the appellant from obtaining the fair trial guaranteed by the Fifth and Sixth Amendments to the U.S. Constitution as made applicable to the states by theFourteenth Amendment, and Article One, Sections Ten and Sixteen of the Ohio Constitution."
The appellant asserts in his fifth assignment of error that the cumulative effect of the errors in his trial deprived him of his constitutional right to a fair trial. Having found no errors in the appellant's trial, we find no merit to his claim.
Accordingly, the appellant's final assignment of error is overruled.
Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
BRYANT and WALTERS, JJ., concur.
[1] State v. Jenks (1991), 61 Ohio St.3d 259, 273.
[2] State v. DeHass (1967), 10 Ohio St.2d 230, 231.
[3] Jenks, 61 Ohio St.3d at paragraph two of the syllabus.
[4] State v. Williford (1990), 49 Ohio St.3d 247, 249, quoting Statev. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus.
[5] State v. Long (1978), 53 Ohio St.2d 91.
[6] 94 Ohio St.3d 340, 2002-Ohio-894 (citations omitted).
[7] Id. quoting Smith v. Phillips (1982), 455 U.S. 209, 219.
[8] State v. Smith (2000), 87 Ohio St.3d 424, 442, 2002-Ohio-450.
[9] Williford, supra.
[10] State v. Howard (1989), 42 Ohio St.3d 18, paragraph two of the syllabus. The charge can also be found at 4 Ohio Jury Instructions (1993), 108, Section 415.50(2) and (3).
[11] Williford, 49 Ohio St.3d at 251.
[12] See Crim.R. 52(B); Long , 53 Ohio St.2d 91; State v. Smith (June 27, 1995), Franklin App. No. 940APA12-1702.
[13] Long, supra, at 94.
[14] Williford, supra, at 253; State v. Cooperrider (1983),4 Ohio St.3d 226, 227; State v. Joseph, 73 Ohio St.3d 450, 455,1995-Ohio-288.
[15] Long, supra.
[16] State v. Benton (2000), 136 Ohio App.3d 801, 805 citing Californiav. Trombetta (1984), 467 U.S. 479, 489.
[17] Id.
[18] State v. Treesh, 90 Ohio St.3d 460, 475, 2001-Ohio-4, quotingArizona v. Youngblood (1988), 488 U.S. 51, 58.