OPINION
{¶ 1} Appellant, Christopher Golden, appeals the April 12, 2002 judgment entry of conviction and sentencing of the Common Pleas Court of Henry County, Ohio.
 {¶ 2} A review of the record reflects that Golden became a suspect of an investigation conducted by the Henry County Sheriff's office for the burglary of two homes in the county. Around 11:00 p.m. on July 25, 2001, Golden came to the sheriff's office with his brother-in-law and was questioned by Sergeant Michael Bodenbender about the burglaries while his brother-in-law waited in another area of the office. During this interrogation, Golden did not admit to committing the burglaries. Although the interrogation was taped, it was not preserved by the sheriff's office. Shortly after Golden left the sheriff's office, his brother-in-law contacted the office and informed Sergeant Bodenbender that Golden admitted to him that he committed the burglaries. Based on this information, Detective Richard Alvord went to Golden's home the following day to question him. This time Golden confessed to committing the two burglaries, and the tape recording of this interrogation was preserved.
 {¶ 3} Golden was indicted by the grand jury for two counts of burglary on September 27, 2001. Golden entered a plea of not guilty and subsequently filed a motion to dismiss and/or suppress on December 7, 2001. A hearing was held on this motion on February 12, 2002. The trial court overruled Golden's motion, and he later changed his plea from not guilty to that of no contest as to both counts on March 6, 2002. The court then found him guilty as to both counts of burglary, and a sentencing hearing was held on April 9, 2002. At the sentencing hearing, Golden was sentenced to two years of imprisonment as to Count 1 and three years as to Count 2. The court further ordered that the sentences be served consecutively and that Golden make restitution in the amount of $350.00. This appeal followed, and Golden now asserts three assignments of error.
 First Assignment of Error {¶ 4} "THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED ERROR IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS AND/OR IN FAILING TO GRANT APPELLANT'S MOTION TO DISMISS."
 {¶ 5} A criminal defendant is denied due process when the State fails to preserve materially exculpatory evidence or destroys potentially useful evidence in bad faith. State v. Benton (2000), 136 Ohio App.3d 801,805 (citing California v. Trombetta (1984), 467 U.S. 479, 489; Arizonav. Youngblood (1988), 488 U.S. 51, 58). The United States Supreme Court has held that a State's failure to preserve evidence does not automatically constitute a constitutional defect, which would warrant a dismissal of the charge. Trombetta, 467 U.S. at 488. In Trombetta, the Court specifically noted that "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." Id. Thus, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means" in order to constitute a denial of due process. Id. at 489.
 {¶ 6} Typically, the burden of proving that lost or destroyed evidence is materially exculpatory and that the evidence cannot be obtained by other reasonable methods is placed on the defendant. See Id. at 488-489; City of Columbus v. Forest (1987), 36 Ohio App.3d 169,171-172. However, when a defendant requests evidence and the State fails to respond in good faith to such a request, the State then bears "the burden of proof as to the exculpatory value of the evidence." Forest,36 Ohio App.3d at 173 (citation omitted). Here, Golden requested that any tape recordings of statements made by him be made available, but the tape of the first interrogation was destroyed prior to being provided to Golden. Thus, the burden shifted to the State to demonstrate that the tape did not provide materially exculpatory evidence.
 {¶ 7} In the case sub judice, Golden maintains that he was threatened during his interrogation by Sergeant Bodenbender and that this threat is what later caused him to confess to Detective Alvord. Golden contends that the tape recording of this interrogation, which was destroyed by the sheriff's office, would reveal that he was coerced into later confessing that he committed these crimes. According to Golden, the coercive tactics employed by the sergeant, as evidenced in the destroyed recording, would support the suppression of his confession, thus playing a significant role in his defense. We disagree.
 {¶ 8} Although neither party disputes that Sergeant Bodenbender's interrogation of Golden was recorded and that the sheriff's office is unable to produce the recording, Golden's own testimony reveals that the interrogation by Sergeant Bodenbender did not produce a confession. During the suppression hearing, Golden testified that Sergeant Bodenbender repeatedly told him that he would go to prison for a long time if he did not cooperate with the police and confess to burglarizing two homes. In addition, Golden testified that the sergeant told him that if he admitted to committing these crimes, then the sergeant would tell the court that he cooperated and that he "wouldn't get a lot of time out of it." Golden contends that these "threats" and "promises" by Sergeant Bodenbender frightened him to the point that he later confessed to Detective Alvord. In essence, Golden argues that his later confession was not given voluntarily, knowingly, and intelligently as is constitutionally mandated because the sergeant's statements unduly coerced him. See State v. Tibbetts (2001), 92 Ohio St.3d 146, 154, citing Colorado v. Spring (1987), 479 U.S. 564, 573.
 {¶ 9} However, the undisputed testimony also revealed that Golden was informed of his Miranda rights and that he waived them before being questioned by Sergeant Bodenbender. Golden also testified that he maintained his innocence throughout this interrogation and that the interrogation lasted no more than one hour. In addition, the record reflects that Golden did not confess until Detective Alvord came to his home the following day, some twelve to thirteen hours after the first interrogation ceased.
 {¶ 10} In determining whether a confession is admissible, a court must examine the totality of the circumstances surrounding the confession. Spring, supra, quoting Moran v. Burbine (1986), 475 U.S. 412,421. Among the relevant circumstances to consider are "`the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of any threat or inducement.'" State v. Green (2000), 90 Ohio St.3d 352, 366, quotingState v. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus, overruled on other grounds, State v. Jackson (l977),50 Ohio St.2d 253, 257-258. Here, the record reflects that this interrogation was not for an extended amount of time. In addition, no physical deprivation or mistreatment was alleged. Furthermore, Golden was quite familiar with the criminal justice system, as his extensive juvenile record reflects, and Golden does not contend that he was too mentally incompetent to have understood his rights.
 {¶ 11} Even assuming that Sergeant Bodenbender made the statements alleged by Golden during this interrogation, Golden's confession did not occur until the following day. In addition, Detective Alvord re-Mirandized Golden, and Golden waived these rights again. It was then that Golden confessed to committing the burglaries. The recording of this conversation, which was preserved, included Golden's statements that he was not the subject of threats and that no promises had been made to him in exchange for his confession. In addition, Golden did not challenge the conduct of Detective Alvord during this time, and the recording reveals no impermissible conduct by the detective. Given these circumstances, we do not find that the conduct of Sergeant Bodenbender, which occurred hours before Golden admitted to burglarizing the two homes, coerced Golden into later confessing to Detective Alvord at his home after receiving Miranda warnings for a second time. Therefore, the State has satisfied its burden to demonstrate that the tape recording of the interrogation conducted by the sergeant was not materially exculpatory, especially in light of the fact that Golden did not confess during this interrogation and that he stated that his later confession was not the result of any threats or promises made to him. Accordingly, the first assignment of error is overruled.
 Second Assignment of Error {¶ 12} "THE TRIAL COURT ERRED IN IMPOSING AN EXCESSIVE SENTENCE ON APPELLANT IN LIGHT OF SIMILAR SENTENCES IMPOSED ON OTHER OFFENDERS."
 {¶ 13} Ohio statutory law provides that "if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B).
 {¶ 14} Golden was convicted of two counts of burglary, a second-degree felony. In addition, the record reflects that he previously had not served a prison term. Thus, the trial court was required to impose the shortest prison term authorized for the offense unless it made the necessary finding to impose a longer term. The shortest prison term authorized for a felony of the second degree is two years. R.C. 2929.14(A)(2). Golden was sentenced to two years of imprisonment as to one count of burglary. Thus, on Count 1, he was given the shortest prison term authorized for burglary. However, Golden was sentenced to three years of imprisonment, rather than two, as to the second count of burglary. Thus, the trial court had to make the requisite finding for imposing a sentence greater than the shortest term authorized. The trial court stated on the record that imposing the shortest prison term would demean the seriousness of Golden's conduct because the "offenses involved entering private homes in the middle of the night with people present and sleeping in their homes." In addition, the trial court found that the minimum sentence would not adequately protect the public from future crime by Golden because his lengthy juvenile record revealed his likelihood of recidivism as Golden had "a willingness to commit this same offense over and over and over." Thus, the trial court made the necessary findings, which were supported by the record. Therefore, the second assignment of error is overruled.
 Third Assignment of Error {¶ 15} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO GIVE REASONS IN SUPPORT OF ITS FINDINGS WHEN IT IMPOSED CONSECUTIVE SENTENCES."
 {¶ 16} The Revised Code permits a trial court to order that multiple prison terms for convictions of multiple offenses be served consecutively. R.C. 2929.14(E)(4). However, the court must make certain findings before so doing. The Code requires a trial court to find "that the consecutive service is necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(E)(4). In addition, a trial court must find "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.14(E)(4). However, a sentencing court must also find that the defendant committed the multiple offenses while he was awaiting trial or sentencing, under a court imposed sanction, or under post-release control, or that "[t]he harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses adequately reflects the seriousness of the offender's conduct[,]" or that "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C. 2929.14(E)(4)(a-c).
 {¶ 17} Our review of the sentencing hearing reveals that the trial court did not make all of the requisite findings to impose consecutive sentences. The trial court found that consecutive service was necessary to protect the public from future crime as evidenced by his high likelihood of recidivism. Based upon this same rationale, the court found that Golden's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by him in accordance with R.C. 2929.14(E)(4)(c). However, the court did not provide the necessary finding on the record that consecutive sentences were not disproportionate to the seriousness of Golden's conduct and to the danger he posed to the public. Thus, this assignment of error is sustained.
 {¶ 18} Additionally, we note that we find it somewhat peculiar that the court would issue consecutive sentences totaling five years, which is less than the maximum sentence of eight years for one count of burglary. This seems odd in light of the fact that the court made the requisite findings for imposing greater than the shortest prison term, which could include a term of five years of imprisonment that could be served concurrently with any sentence on the second count. Thus, the court could have readily sentenced Golden to the same amount of time without having to order consecutive sentences, which require certain findings that must be supported by the record. Although we are not willing to say that the trial court is precluded from such a sentencing plan, we are unable to perceive the advantage in doing so. In any event, if the court elects to do so, the requisite findings must all be made.
 {¶ 19} For these reasons, the judgment of the Common Pleas Court of Henry County, Ohio, is affirmed as to the first and second assignments of error and reversed and the cause remanded as to the third assignment of error.
Judgment affirmed in part, reversed in part and cause remanded.
 BRYANT and WALTERS, JJ., concur.